**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| VELIDA R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-14820 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| LELAND DUDEK, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Velida R. seeks review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner")[1] denying her application for disability insurance

benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Specifically, Plaintiff claims

that the Administrative Law Judge ("ALJ") who denied her application erred in finding that she

is not disabled within the meaning of the statute. For the reasons that follow, the Court finds that

the ALJ's decision was supported by substantial evidence. The decision is therefore affirmed.

**BACKGROUND**

Plaintiff filed the underlying application for disability insurance benefits on March 5,

2021. (Administrative R. ("A.R.") at 106, Dkt. No. 5-1.) According to Plaintiff, she is disabled

due to her right hip degenerative joint disease, cardiac arrhythmias, hypertension, obesity,

gastroesophageal reflux disease, major depressive disorder, anxiety disorder with panic attacks,

and post-traumatic stress disorder ("PTSD"). (*Id.* at 336.) Plaintiff worked as an assistant

transportation manager at a hotel until April 21, 2020, when she was laid off as a result of the

---

[1] This case was filed when Martin O'Malley held the position of Commissioner. Leland Dudek has been
substituted as the proper Defendant pursuant to Federal Rule of Civil Procedure 25(d).

COVID-19 pandemic. (*Id.* at 108, 123–24.) Since that date she has not engaged in any substantial gainful activity. (*Id.* at 108.) At the time of her last substantial gainful activity, Plaintiff was 49 years old. (*Id.* at 114.)

After Plaintiff's application for disability insurance benefits was initially denied on December 2, 2021, and then denied again upon reconsideration on June 13, 2022, a hearing was held before an ALJ on November 7, 2022. (*Id.* at 106.) Even before being laid off in April 2020, Plaintiff, a native of Bosnia, dealt with PTSD from the violence she witnessed during the Bosnian War. (*Id.* at 287, 422, 427.) For example, Plaintiff reported seeing her father get beaten with blunt objects and the dismemberment of an uncle. (*Id.* at 422.) At the hearing, Plaintiff testified that she fell into a deep depression after being laid off from her job in April 2020. (*Id.* at 123–24.) As a result, she stated that she experienced anxiety-induced pressure in her chest that prevented her from walking longer than 15 to 30 minutes. (*Id.* at 126–27.) Further, she reported a lack of energy that left her unable to stand longer than 20 minutes or lift more than 15 pounds. (*Id.* at 127.) Plaintiff testified that she suffered from daily panic attacks that caused her to shake and cry uncontrollably. (*Id.* at 130.) She also stated that her PTSD-induced nightmares of the war atrocities she witnessed left her unable to sleep. (*Id.* at 129.) According to Plaintiff, she was unable to afford mental-health treatment because her lack of employment left her uninsured. (*Id.* at 127–28.)

In a written decision issued after the hearing, the ALJ concluded that Plaintiff was not disabled prior to the date of his decision, November 18, 2022. (*Id.* at 115.) To begin, the ALJ determined that Plaintiff's obesity, degenerative joint disease of the right hip, hypertension, sinus tachycardia, depressive disorder, anxiety disorder, and PTSD constituted severe impairments. (*Id.* at 108.) On the other hand, he found that Plaintiff's gastroesophageal reflux disease was

nonsevere because the record supported no functional limitations on account of that condition. (*Id.* at 109.) Next, the ALJ concluded that none of Plaintiff's impairments met or equaled one of the listings in the agency's Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, so as to render her *per se* disabled. (*Id.* at 109–10.)

The ALJ then turned to determine Plaintiff's residual functional capacity ("RFC"). In particular, he found that Plaintiff had the RFC to perform light work subject to the following limitations: no climbing ladders, ropes, scaffolds; occasionally climbing ramps and stairs, balancing, stopping, crouching, kneeling, and crawling; and no exposure to unprotected heights or dangerous moving machinery. (*Id.* at 111.) The ALJ further noted that, notwithstanding Plaintiff's reported psychological issues, she was able to understand, remember, and carry out simple job instructions in a routine work setting with few if any changes, and could tolerate occasional interaction with coworkers and supervisors but should not participate in any collaborative projects with them or engage with the public. (*Id.* at 113.) Lastly, the ALJ concluded that Plaintiff should not have a production pace job with mandatory and numerically strict hourly quotas but would be able to satisfy end-of-the-day employer expectations. (*Id.*)

Although the ALJ agreed that Plaintiff was unable to perform her past relevant work, he nonetheless determined, after considering her age, education, work experience, and RFC, that Plaintiff was capable of performing work that existed in significant numbers in the national economy. (*Id.* at 114.) In reaching that conclusion, the ALJ credited the testimony of a vocational expert who opined that Plaintiff would be able to perform the requirements of occupations such as merchandise marker, collator operator, and router. (*Id.* at 115.) Consequently, the ALJ concluded that Plaintiff was "not disabled." (*Id.*)

## DISCUSSION

A federal court reviews "an ALJ's disability determination deferentially." *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). Its review is confined to the rationales offered by the ALJ and the court asks only whether the decision is supported by substantial evidence. *Shauger v. Astrue*, 675 F.3d 690, 695–96 (7th Cir. 2012). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The reviewing court's job is not to "reweigh the evidence or substitute [its] own judgment for that of the Commissioner." *Id.* Still, where the ALJ denies benefits, his decision must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). On the other hand, remand is warranted when an ALJ's decision contains a legal error. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). That process requires the ALJ to ask, in the following order: (1) whether the claimant is not currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the impairment meets the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant's RFC renders her unable to perform her past relevant work; and (5) whether the claimant's RFC, age, education, and work experience make her unable to adjust to other work existing in significant numbers in the national economy. *Id.* "A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two, or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Here, Plaintiff challenges three of the ALJ's conclusions as not supported by substantial evidence. First, she claims that the ALJ wrongly found at step three that her depression and anxiety did not meet or equal a listed impairment. Second, Plaintiff argues that the ALJ should have concluded that she only had the RFC to perform sedentary work. Finally, Plaintiff claims that the ALJ did not satisfy his burden of proving that Plaintiff was able to perform other work existing in significant numbers in the national economy.

## I.      Listed Impairment

Plaintiff argues that the ALJ erred at step three when he concluded that neither Plaintiff's depression nor her anxiety met the criteria of a listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1. In particular, Plaintiff contends that the ALJ should have found that Plaintiff met the criteria of one of the following: depressive disorder under 12.04, anxiety or panic disorder under 12.06, or PTSD under 12.15.

As an initial matter, the Court notes that, in arguing that the ALJ erred at step three, Plaintiff relies in significant part on medical evidence that she submitted to the Appeals Council in seeking review of the ALJ's decision. That evidence post-dated the ALJ's ruling and only spoke to Plaintiff's condition after the date of the ALJ's ruling. However, "additional evidence submitted to the Appeals Council will be evaluated only if it is new and material and relates to the period on or before the date of the [ALJ's] hearing decision." *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015) (internal quotation marks and footnote omitted). While Plaintiff argues that this new evidence sheds light on how her mental-health issues have worsened, Plaintiff cannot prove that the ALJ erred with evidence reflecting only changes to her condition after the date of his decision. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision . . . ."). Rather, changes to

Plaintiff's condition arising after the ALJ's decision are a matter for a new benefits application. *See id.* ("If [the claimant] has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application.").

Based on the medical evidence properly before the ALJ, the Court finds no error at step three. At step three, it was Plaintiff's burden to show that her condition met or equaled a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Notably, at the hearing, Plaintiff (represented by counsel) made no mention of any listing under which she should be considered *per se* disabled. In such a circumstance, the ALJ had no "affirmative obligation . . . to scour the Listings for a possible match." *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022). Nonetheless, the ALJ fully considered whether Plaintiff met the criteria of each of listings 12.04, 12.06, and 12.15 (among others), and explained why the record evidence led him to conclude that she did not. (A.R. at 110.) Plaintiff's arguments as to why the ALJ erred at step three amount to nothing more than her disagreement of his evaluation of the severity and persistence of her symptoms. Yet "[t]his is not a case where [the] ALJ ignored evidence contrary to his conclusion." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). Indeed, each of the ALJ's step three conclusions cited findings from Plaintiff's mental health examinations. By contrast, Plaintiff fails to point to any examination or physician's opinion showing that her mental limitations were more severe than the ALJ's assessment.

While Plaintiff disagrees with the ALJ's assessments, without more, it is not for this Court "reweigh the evidence" or otherwise "substitute [its] own judgment for that of" the ALJ. *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023). Because the ALJ's determination at step three was reasoned and relied on the uncontroverted medical evidence in the record, the Court finds that it was supported by substantial evidence.

## II.      RFC

Next, Plaintiff faults the ALJ for determining that she had the RFC to perform light work. For the most part, Plaintiff's argument centers around her contention that the ALJ failed to credit properly her subjective testimony regarding her standing and sitting limitations. An ALJ's determination of a claimant's credibility "will stand as long as there is some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation marks omitted). Thus, this Court may "only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The ALJ's determination satisfies this lenient standard.

Despite Plaintiff testifying that she is unable to stand or walk for prolonged periods, the ALJ found that her claimed limitations were not sufficiently corroborated by the medical evidence in the record. Plaintiff is not able to point to any medical evidence showing that she had more standing or walking limitations than what the ALJ attributed to her. *See Gedatus*, 994 F.3d at 904 ("A fundamental problem is [the claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."). Neither the psychological nor internal medicine consultative examiners found that Plaintiff had any limitations in standing or sitting. (A.R. at 424–33.) Indeed, the internal medicine consultative examiner found that Plaintiff was able to stand without limitation and could ambulate without assistance for 50 feet. (*Id.* at 432.) Likewise, the state agency medical experts concluded that Plaintiff was able to stand or walk about six hours in an eight-hour workday. (*Id.* at 148, 160.) Given this support in the record, the Court cannot find that the ALJ's evaluation of Plaintiff's standing and walking limitations was patently wrong.

In addition, Plaintiff argues that the ALJ's determination that she could occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl was contradicted by the internal

medicine consultative examiner's opinion that Plaintiff is "unable to bend, kneel, [and] squat." (*Id.* at 432.) But there was other evidence in the record supporting the ALJ's conclusion that Plaintiff could do work involving occasional bending, kneeling and squatting. Notably, in a function report that Plaintiff submitted to the Commissioner, Plaintiff did not identify bending, squatting, or lifting as abilities affected by her conditions. (*Id.* at 291.) Moreover, one state-agency medical expert found that Plaintiff had no postural limitations, whereas another limited Plaintiff only with respect to frequent stooping and crouching while having an unlimited kneeling ability. (*Id.* at 148, 160.)

Like at step three, Plaintiff's complaint with respect to the ALJ's RFC determination boils down to her disagreement with how the ALJ weighed the evidence. But once again, the Court finds that the ALJ considered the record as a whole and adequately explained his conclusions, and therefore his RFC determination was supported by the substantial evidence.

### III.    Ability to Perform Other Work

Finally, Plaintiff argues that the ALJ erroneously found that, based on her age, education, work experience, and RFC, Plaintiff was capable of performing other work that exists in significant numbers in the national economy. The ALJ's determination at step five was informed by a vocational expert's testimony about the jobs available to a hypothetical individual with Plaintiff's RFC. Yet Plaintiff points out that, when asked on cross-examination if there would be jobs available for the same hypothetical individual if they required unscheduled breaks or time off task equal to about 15% of the workday, the expert responded that such limitations would preclude competitive employment. (*Id.* at 140.)

Although the ALJ did not specifically address the question of a hypothetical individual who needed to spend about 15% of the workday off task, his earlier conclusions regarding Plaintiff's mental functioning demonstrates that he did not believe Plaintiff to be so limited. *See,*

*e.g.*, *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[B]oth the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record . . . ." (internal quotation marks omitted)). In discussing Plaintiff's RFC, the ALJ noted that the medical evidence in the record did not show that Plaintiff's depression, anxiety, and PTSD symptoms were as limiting as Plaintiff claimed them to be. In particular, the ALJ noted numerous mental health examination findings that placed Plaintiff within normal limits. (A.R. at 112; *see also id.* at 360, 368, 383, 387, 421–25, 432, 441.) And the psychological consultative examiner opined that Plaintiff would be able to withstand the stress and pressures associated with daily work activity, opining that Plaintiff was "able to perform instrumental daily functioning on a consistent basis." (*Id.* at 425.)

In short, the Court finds that the medical evidence did not show that Plaintiff would need substantial time off task during her work, and thus the ALJ was entitled to accept the vocational expert's testimony that there were jobs available in the national economy for someone with the RFC that the ALJ ascribed to Plaintiff. Given that Plaintiff otherwise identifies no issues with respect to the substance of the vocational expert's testimony, the ALJ was entitled to rely upon it. *E.g.*, *Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024) ("[A]ssuming there are no obvious flaws in the testimony, where a claimant has failed to put the vocational expert's foundation or methodology into issue and the expert's testimony is otherwise uncontradicted, the ALJ is entitled to credit that testimony.").

**CONCLUSION**

For the foregoing reasons, the ALJ's decision denying Plaintiff's application for disability insurance benefits is affirmed. Plaintiff's motion for summary judgment (Dkt. No. 10) is denied; the Commissioner's motion for summary judgment (Dkt. No. 15) is granted. The Clerk is directed to enter Judgment in favor of the Commissioner.

ENTERED:

Dated:  March 17, 2025

Andrea R. Wood
United States District Judge